24CA2245 Green v Bauby 12-31-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2245
El Paso County District Court No. 24CV322
Honorable David Prince, Judge

Christopher Green,

Plaintiff-Appellant,

v.

August Bauby, Manager of Time and Release Operations for the Colorado
Department of Corrections,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Lum and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 31, 2025

Christopher Green, Pro Se

Philip J. Weiser, Attorney General, Rebekah Ryan, Senior Assistant Attorney
General, Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Christopher Green, appeals the district court's ruling

denying his petition for mandamus relief pursuant to

C.R.C.P. 106(a)(2).  We affirm.

## I.    Background and Procedural History

¶ 2    In 2005, Green was sentenced in Larimer District Court Case

No. 04CR1242 (the 2004 case) to six years in the custody of the

Department of Corrections (DOC) to be followed by a mandatory

parole period of three years.  In 2010, Green was released and

began serving his parole.  While out on parole, Green committed

three new offenses in Larimer County.

¶ 3    In 2012, Green pleaded guilty to two charges in Larimer

District Court Case No. 10CR1456 (the 2010 case).  On the first

charge, the court sentenced him to twenty-eight years in the

custody of the DOC to be followed by a mandatory parole period of

five years.  On the second charge, the court sentenced him to twelve

years in the custody of the DOC to be followed by a mandatory

parole period of three years.  Green was separately sentenced in

Larimer District Court Case No. 11CR1499 (the first 2011 case) to

six years in the custody of the DOC to be followed by a mandatory

parole period of two years.  The court ordered these three sentences

to run concurrently with each other.[1]  Approximately one year later, Green pleaded guilty to a class 5 felony that occurred in the detention center.  He was then sentenced in Larimer District Court Case No. 11CR1746 (the second 2011 case) to two years in the custody of the DOC to be followed by a mandatory parole period of two years.  The court ordered this sentence to run consecutively with the sentences for the 2010 case and the first 2011 case.

¶ 4     Green filed a petition for mandamus relief arguing that the court miscalculated his parole eligibility date (PED) when it applied *Diehl v. Weiser*, 2019 CO 70, as opposed to *Nowak v. Suthers*, 2014 CO 14.  Bauby filed a motion to dismiss, which the court granted after finding *Diehl* was properly applied to the PED calculation.

## II.    PED Calculation

¶ 5     Green argues the district court erred by granting Bauby's motion to dismiss because it failed to address whether Green discharged his parole for the 2004 case before his sentences were imposed in his three later cases.  He contends that the parole

---

[1] Green received 469 days of presentence confinement credit for his sentences in the 2010 case.  He received 113 days of presentence confinement credit for his sentence in the first 2011 case.

2

component of his sentence was not discharged, and therefore, the original sentencing date must be included as part of his "one continuous sentence" to calculate his PED. We disagree.

### A. Standard of Review and Applicable Law

¶ 6 We review a trial court's ruling on a motion to dismiss de novo. *Winston v. Polis*, 2021 COA 90 ¶ 6. Dismissal is appropriate unless the complaint alleges sufficient facts that, taken as true, demonstrate a plausible basis to support a claim for relief. *Id.*; *see* C.R.C.P. 12(b)(5).

¶ 7 Relief under C.R.C.P. 106(a)(2) is an extraordinary remedy to compel the performance of a nondiscretionary ministerial duty. *Jefferson Cnty. Educ. Ass'n v. Jefferson Cnty. Sch. Dist. R-1*, 2016 COA 10, ¶ 10. To grant a mandamus claim, "(1) the plaintiff must have a clear right to the relief sought, (2) the defendant must have a clear duty to perform the act requested, and (3) there must be no other available remedy." *Bd. of Cnty. Comm'rs v. Cnty. Rd. Users Ass'n,* 11 P.3d 432, 437 (Colo. 2000).

¶ 8 Under section 17-22.5-101, C.R.S. 2025, "when any inmate has been committed under several convictions with separate sentences, the [DOC] shall construe all sentences as one

continuous sentence." "This 'one-continuous-sentence' rule requires the DOC, among other things, to combine the inmate's sentences into one composite continuous sentence, and then determine when that continuous sentence begins to run." *Diehl,* ¶ 15.

¶ 9 Any person who receives a sentence for a class 2, 3, 4, 5, or 6 felony "shall be eligible for parole after such person has served fifty percent of the sentence imposed." § 17-22.5-403(1), C.R.S. 2025. But "any person convicted and sentenced for . . . aggravated robbery, committed on or after July 1, 2004, but before January 1, 2025, shall be eligible for parole after such person has served seventy-five percent of the sentence imposed." § 17-22.5-403(2.5)(a). When an inmate is subject to multiple sentences that fall under different subsections of section 17-22.5-403, the DOC must "employ[] a hybrid system that effectuates both of the calculation rules." *Owens v. Carlson,* 2022 CO 33, ¶ 5.

## B. Analysis

¶ 10 There are three cases that are relevant to Green's appeal. First, in *Executive Director of Colorado Department of Corrections v.*

*Fetzer*, 2017 CO 77, the supreme court addressed the calculation of the PED for an inmate serving multiple concurrent sentences with different effective dates. The supreme court concluded that the DOC should have calculated the PED based on the earliest effective date of the inmate's separate sentences in his one continuous sentence, rather than the governing sentence. *Fetzer*, ¶¶ 16-18. Next, in *Nowak,* the supreme court concluded that the DOC must aggregate consecutive sentences when calculating an inmate's PED, even when doing so results in the inmate becoming parole eligible before serving the minimum percentage of the sentence required by section 17-22.5-403. *Nowak,* ¶¶ 29, 40. Finally, in *Diehl,* the supreme court concluded that the PED "for an inmate who was reincarcerated for a parole violation and is sentenced for additional offenses should be calculated using the beginning of the period of mandatory parole as the start of the inmate's one continuous sentence." *Diehl,* ¶ 26.

¶ 11 All three of these cases apply to Green. *Fetzer* applies to Green's concurrent sentences in the 2010 case and the first 2011 case. And *Nowak* applies to Green's consecutive sentence in the second 2011 case. Together, these cases explain that Green's

sentences must be aggregated into one sentence length beginning from the earliest sentence's effective date.[2] Finally, *Diehl* answers what the earliest sentence's effective date is when an inmate is released to mandatory parole. The court made clear that the imprisonment component of the sentence is discharged when the release occurs and is no longer considered part of the one continuous sentence for purposes of calculating the PED. *Diehl,* ¶ 26.

¶ 12 We reject Green's contention that *Diehl* does not apply here "because [*Diehl*] concerned an inmate[']s parole before his mandatory release date," whereas Green "was paroled on his mandatory release date." This is a distinction without a difference. In *Diehl,* the supreme court succinctly summarized the issue before it as "how the DOC should calculate a new parole eligibility date

---

[2] Green's twenty-eight-year sentence in the 2010 case is for aggravated robbery and therefore subject to the seventy-five percent minimum for parole eligibility. *See* § 17-22.5-403(2.5)(a), C.R.S. 2025. Green's sentence in the second 2011 case is subject to the fifty percent minimum for parole eligibility. *See* § 17-22.5-403(1). Because these are "consecutive sentences, at least one of which is subject to one calculation rule and at least one of which is subject to a different calculation rule," *Owens v. Carlson,* 2022 CO 33, ¶ 44 n.5, Green's parole eligibility date for his one continuous sentence is calculated using a hybrid system, *see id.* at ¶ 5.

when an offender *who is on parole* violates conditions of parole and is both reincarcerated to serve the remainder of his parole period and also convicted of additional offenses for conduct that occurred while he was paroled." *Id.* at ¶ 16 (emphasis added). Notably, the supreme court did not differentiate between an inmate who is released from prison at the discretion of the state board of parole and an inmate who is paroled on their mandatory release date, and we will not read in such language.

¶ 13   Accordingly, the district court did not err when it applied *Diehl* to Green's case. Moreover, because Green's prison component of his sentence for the 2004 case was discharged when he was released on parole, the DOC correctly calculated his PED based on the date of his release to mandatory parole. Thus, the district court did not err by granting the motion to dismiss.[3]

### III.   Disposition

¶ 14   The judgment is affirmed.

JUDGE LUM and JUDGE MOULTRIE concur.

---

[3] Though Green raised an ex post facto challenge in the district court, he does not do so on appeal. Thus, that claim is deemed abandoned and will not be addressed further. *See Gandy v. Williams*, 2019 COA 118, ¶ 38 n.4.

7